**H. L. CHOLEVA, Appellant,**

**v.**

**SPARTAN AVIATION, INC., Appellee.**

**No. 973.**

Court of Civil Appeals of Texas, Corpus Christi.

June 26, 1975.

Randall P. Crane, Chavez & Barnard, Harlingen, for appellant.

Albert E. Coneway, Harlingen, for appellee.

## OPINION

BISSETT, Justice.

This is a summary judgment case. H. L. Choleva sued Spartan Aviation, Inc. to recover damages for an alleged breach of an employment contract. Summary judgment, following a motion therefor, was rendered for Spartan Aviation, Inc., defendant-appellee. H. L. Choleva, plaintiff-appellant, has appealed.

Suit was instituted by appellant on November 10, 1972. The action is based upon an alleged employment contract with appellee, which, according to the allegations contained in the original petition (the trial petition) covered a two-year period of time that began on April 12, 1971 and terminated on April 12, 1973. It was further alleged that the contract was wrongfully terminated by appellee on January 28, 1972. Appellant sought to recover for the loss of salary from January 29, 1972 to April 12, 1973 and for the money value of additional benefits that allegedly would have accrued under the contract had it not been terminated.

In addition to a general denial, appellee pled that the contract sued on was unenforceable under the Statute of Frauds. Appellant did not, by amended or supplemental petition, reply to appellee's plea that the contract was in violation of the Statute of Frauds, although he did claim that there was "a written agreement" in his written opposition to appellee's motion for summary judgment.

Appellant, in three points of error, complains that it was error to grant a summary judgment to appellee because: appellee failed to show that there was no genuine issue of fact; part performance of the contract removed it from the Statute of Frauds; and if in fact no signed contract or written memorandum thereof existed, appellant should have been allowed to amend his pleadings in order to recover under an oral contract. None of the points can be sustained.

Appellee's motion for summary judgment was based on the grounds: 1) the contract sued on was not in writing, and if so, was not signed by it, the person sought to be charged with the payment provisions under such contract; and 2) the contract was in contravention of that provision of the Statute of Frauds which requires that any agreement which is not to be performed within one year from the making of the agreement is not enforceable by either party unless such agreement is in writing and signed by the person to be charged with the promise or agreement, or by someone lawfully authorized to sign for him.

Appellant, in his written response to appellee's motion for summary judgment, contended: 1) that "there was a written agreement as to the terms of his employment contract signed by defendant"; 2) that "if all discovery requested of defendant is completed, this written contract will be disclosed"; 3) that "if no written memorandum of the employment agreement is found, summary judgment still should not be granted since plaintiff's damages can be sustained on the basis of oral contracts for a period of a year or less which were rene-

gotiated from time to time as alleged in plaintiff's original petition"; and 4) "whether or not such oral contract did exist in which plaintiff is entitled to recover the alleged damages is a question of fact".

Summary judgment evidence consisted of appellee's answers to written interrogatories which it filed on April 11, 1973, and appellant's deposition which was taken on January 4, 1974. Appellee, in reply to the first interrogatory, admitted that appellant had been employed by it, and in reply to a question asked in the second interrogatory stated that the dates on which *each* term of his employment began and terminated were: "June 1, 1970 through December 31, 1970; April 12, 1970 through January 28, 1972".

Appellant, in his deposition, said that his contract negotiations were with Jim O'Rourke, the Vice-President and General Manager of the appellee corporation; that they worked out "an agreement for regular employment" about June 5, 1970, effective June 1, 1970; that a discussion was had with respect to annual salary, expense allowances and other benefits in connection with his employment "for a minimum of six months"; that he had additional negotiations with O'Rourke concerning his employment subsequent to June 5, 1970; that on April 10, 1971 he and O'Rourke "got together for a short time, about an hour or so", when the matter of employment and compensation was discussed; that he had a sheet prepared with his main requirements; that he delivered the sheet to O'Rourke at that time; that the next Monday, Bernice Cole, "the local girl who took care of personnel", wanted him to sign the standard employee contract that she had filled out and signed, . . . that he did not sign it because he "had a different agreement with O'Rourke". The two documents were attached to and made part of the deposition as exhibits. The document referred to by appellant as "the standard contract" is a printed form with a line for signature by appellee's "Personnel Director" and a line for signature by the employee. The printed

form of the employment contract which appellant said was tendered to him (as his employment contract) is not signed by a corporate officer of the appellee corporation, but is signed by Bernice Cole. There is no showing that Bernice Cole was authorized to sign the document as the act of appellee. The document was not signed by appellant. The instrument does not set out any term or period of time covered by the contract. The "sheet", which appellant prepared, consists of a blank piece of paper upon which plaintiff hand-printed four requirements which he wanted incorporated in his employment contract. It was not signed by anyone; it did not mention a · time-period of employment. Appellant acknowledged in his deposition that no formal written contract was ever executed by the parties, and that he had not asked for nor had he received a signed employment contract from appellee for the two year period commencing April 12, 1971.

Appellant also stated in his deposition that following his conversations with O'Rourke on or about April 10, 1971, he then contacted Jerry Dicks, the "supervisor when it came to details at Spartan", and asked for a copy of the standard memorandum agreement relating to employment contracts; that he was told the company did not have a standard employment agreement, except for Philippine contract labor on Wake Island, and that all that was required for a contract was for O'Rourke to make a note of the agreement made and put it in appellant's personnel file; that he (appellant) and O'Rourke "went over some of these things again"; that he explained the conversation with Jerry Dicks to O'Rourke, and O'Rourke said that he would "take care of it"; that during the negotiations with O'Rourke he (appellant) "insisted on long term employment for a period of about two years"; that he reached such an agreement with O'Rourke; and that O'Rourke agreed to provide a memorandum of agreement for the long term employment of two years.

Tex.Bus. & Comm.Code Ann., V.T.C.A. § 26.01(a), (b)(6), invoked by appellee, provides:

"(a) A promise or agreement described in Subsection (b) of this section is not enforceable unless the promise or agreement, or a memorandum of it, is

(1) in writing; and

(2) signed by the person to be charged with the promise or agreement or by someone lawfully authorized to sign for him.

(b) Subsection (a) of this section applies to

\*     \*     \*     \*     \*     \*

(6) an agreement which is not to be performed within one year from the date of making the agreement; . . . ."

The present controversy does not concern "a series of employment agreements between plaintiff and defendant which span a period from around June 1, 1970 through plaintiff's termination on January 28, 1972", as argued by appellant in his brief. The sole employment agreement involved in this case is the agreement that was made in April, 1971.

Appellant, in his deposition, makes repeated references to a written memorandum of his employment contract which he says *was* to be signed by defendant and filed in his "personnel file". However, the record does not contain a written memorandum of an employment contract which *is* signed by anyone lawfully authorized to sign the same for appellee. The writings (the printed contract form and the "sheet"), which are attached to the deposition, were placed in appellant's "personnel file," and while such action is in accord with the usual, proper and reasonable administrative procedures pertaining to the keeping of business records, the fact that the printed form was signed by Bernice Cole, standing alone, is not sufficient to show that she was lawfully authorized to sign the same for

appellee. It affirmatively appears that the agreement between appellant and O'Rourke was the only agreement reached by and between appellant and appellee. That agreement was for two years. It was unenforceable under the Statute of Frauds. It was established as a matter of law that there is no genuine issue as to any material fact in this case.

The employment contract was not removed from the bar of the Statute of Frauds because of partial performance. Chevalier v. Lane's, Inc., 147 Tex. 106, 213 S.W.2d 530 (1948), is controlling of that contention. There, Lane's, Inc., the employer, and Chevalier, the employee, entered into an oral agreement on February 18, 1945, whereby it was agreed Chevalier would go to work for Lane's, Inc. for one year, at an annual salary, payable in monthly installments, and in addition thereto, would be paid $1,500.00 bonus at the end of each six-months period. Chevalier went to work under the terms of the verbal agreement on March 1, 1945; he worked for six months (and was paid his monthly salary), at which time he was dismissed without cause and was not paid the bonus. He then filed suit to recover a) the bonus due him at the end of the six-months period, and b) the remaining balance due him under the agreement. He reasoned that the bonus was not within the Statute of Frauds since it was due within one year from the date the agreement was made, and that he was entitled to the other contractual benefits because part performance of the agreement took it out from under that section of the Statute of Frauds relating to oral agreements which were not to be performed within the space of one year from the date the agreement was made. The trial court granted the defendant's motion for judgment non obstante veredicto on the ground that the contract sued on was entirely oral and was one which could not be performed within one year from the time it was made (February 18, 1945) and was, therefore, in violation of the Statute of Frauds. Judgment was rendered that Chevalier take

nothing. The Beaumont Court of Civil Appeals affirmed that judgment (208 S.W.2d 113), and the judgments of the trial court and the Court of Civil Appeals were affirmed by our Supreme Court.

In the instant case, the contract sued on was not shown to be in writing. It was made on April 12, 1971. It covered a two-year period of time. It was breached on January 28, 1972, some nine months, two weeks and a few days after it was made. In accord with the rule announced in Chevalier v. Lane's, Inc., supra, we hold that the services performed by appellant from April 12, 1971 through January 28, 1972 did not take the contract out of the operation of the Statute of Frauds.

We do not agree with appellant that "summary judgment should not have been granted to defendant if some (or all) of plaintiff's damages could have been sustained by repleading" (as stated in his brief). Appellant's first set of written interrogatories were served on appellee about February 1, 1973. Appellee, in his reply, filed on April 10, 1973, answered some of the interrogatories, but refused to answer interrogatories 6, 7 and 8. A second set of written interrogatories was served on appellee on October 18, 1974. They were not answered by appellee. The trial court, by order made and signed on November 4, 1974, set appellee's motion for summary judgment for hearing on November 19, 1974. Counsel for appellant was notified of that action on November 4, 1974. Written opposition to the motion was filed by appellant on November 19, 1974. Summary judgment in appellee's favor was rendered on November 27, 1974.

Appellant did not attempt to compel appellee to reply to all of the interrogatories, as provided by Rule 168, Texas Rules of Civil Procedure. Nor did appellant seek additional time to oppose appellee's motion for summary judgment under the provisions of Rule 166–A(f), T.R.C.P. Appellant did not amend his pleadings. He has not shown that he was prevented by either appellee or the trial court from either amending his

petition so "that he could have recovered under the terms of an oral contract". He filed no pleadings in reply to appellee's plea which raised the Statute of Frauds as a defense to the action brought by him. There is nothing in the record which indicates that an enforcement of the Statute of Frauds would itself amount to a fraud on appellant.

We know of no Rule of Civil Procedure, Statute, or case which denies a trial court the power to render summary judgment on the ground that a litigant might, at some future stage in the proceedings, amend his pleadings in some way that would avoid the rendition of a summary judgment. If that were the case, it would be impossible ever to render summary judgment against a litigant.

We have carefully reviewed the record and have considered all of appellant's points of error. They are all overruled. The trial court correctly rendered summary judgment for appellee that appellant take nothing by his suit.

The judgment of the trial court is affirmed.